IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN GAGLIARDI,

Plaintiff,

v.

COUNTY OF ALLEGHENY, a political subdivision of the Commonwealth of Pennsylvania, CALVIN LIGHTFOOT, former Warden of Allegheny County Jail, FRED ROSEMEYER, present Warden of Allegheny County Jail, JAMES C. RODDEY, former County Chief Executive, DAN ONORATO, present County Chief Executive and JOHN DOE, a County Correctional Officer, with name unknown, JANE DOE, a County Correctional Officer, with name unknown, JACK DOE, a County Correctional Officer, with name unknown, and JILL DOE, a County Correctional Officer, with name unknown.

Defendants.

Civil Action No. 04-241
Re: Doc. Nos. 62 & 64
United States District Judge Cercone
United States Magistrate Judge Lenihan

**REPORT AND RECOMMENDATION**

I. RECOMMENDATION

It is recommended that the Defendants' Motions for Summary Judgment at Docket Nos. 62 and 64 be granted.

II. REPORT

This case was removed from the Court of Common Pleas of Allegheny County to the United States District Court for the Western District Of Pennsylvania on February 19, 2004. (Doc. No. 1.) On November 24, 2004, this Court filed its Report and Recommendation

recommending that Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12 (b)(6) be granted on all claims except the following: 1) Plaintiff's Eighth and Fourteenth Amendment claim that Defendants were deliberately indifferent in denying medications for a serious diabetes and/or cardiac condition for an extended period of two days; and 2) Plaintiff's Fourteenth Amendment Procedural Due Process claim.[1] (Doc. No. 18.) On December 16, 2004, United States District Judge David S. Cercone adopted this Court's Report and Recommendation. (Doc. No. 20.) Thereafter, this Court granted Plaintiff's Motion for Joinder on October 17, 2005, and Plaintiff was permitted to file a Second Amended Complaint adding Allegheny Correctional Health Services, Inc. ("ACHS") as a Defendant, setting forth all claims, "both factual and legal, against that Defendant." (Doc. No. 42.) Plaintiff filed his Second Amended Complaint on November 10, 2005. (Doc. No. 44.) Finally, on April 13, 2006, United States District Judge Cercone granted Plaintiff's Motion for Voluntary Dismissal of ACHS. (Doc. No. 58.) Thereafter, the remaining Defendants filed the present Motions for Summary Judgment. (Doc. Nos. 62 & 64.)

A. Facts

Plaintiff, John Gagliardi ("Plaintiff" or "Gagliardi") was arrested on July 22, 2003 on suspicion of Forgery and Criminal Attempt to Commit Theft. (Second Amended Complaint at ¶ 16.) Plaintiff was arraigned and thereafter taken to the Allegheny County Jail ("Jail"). (Second Amended Complaint ¶ 16-17.) Upon processing into the Jail, Plaintiff possessed a

[1] Affording this § 1983 pro se Plaintiff every favorable inference and taking all allegations of his Complaint as true, this Court recommended that Plaintiff's Fourteenth Amendment Procedural Due Process claim should not be dismissed in the absence of the Allegheny County Jail policy and procedures in issue.

plastic pill container containing various prescription medications for a variety of health conditions, including diabetes and a cardiac condition. (Second Amended Complaint at ¶ 19.) Correctional officers confiscated Plaintiff's medications and delivered them to the Jail medical infirmary for inspection. (Seconded Amended Complaint at ¶ 20.) The medications included: Accupril, 10 mg., Metformin Hcl, 500 mg. Tablet, Lipitor, 20 mg. Tablet, Metoprolol, 50 mg. Tablet, Furosemide, 40 mg. Tablet, Glyburide Micro, 3 mg. Tablet, Lanoxin, 125 mcg. Tablet, One Touch Ultra Test, ST. (Second Amended Complaint at ¶ 22.) Plaintiff claims that instead of allowing him to use his own prescribed medications, the medical technicians threw his medications away, stating that they would determine what, if any, medications Plaintiff would receive. (Second Amended Complaint at ¶ 25.)[2] Plaintiff further avers that it was not until the early afternoon of July 24, 2003, almost immediately before being processed out of the Jail, that he began "to receive any of the prescribed medicines." (Second Amended Complaint at ¶ 27.)

B. Legal Standard

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). Summary judgment

[2]In his submissions to this Court on Summary Judgment, Plaintiff contends that the Defendants themselves have raised a disputed issue of fact in contesting who confiscated, and thereafter, disposed of, Plaintiff's medications, employees of ACHS, or correctional officers employed by the Jail. (Doc. No. 71 at ¶ 3; Doc. No. 66 at ¶ 4.) Assuming these facts are disputed, they are not genuine issues of material fact, and therefore provide no bases for denying summary judgment. See Analysis, infra, at pp. 4-9.

may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e) (emphasis added by Matsushita Court). An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty-Lobby, Inc., 477 U.S. 242, 248 (1986). Finally, a court must employ less stringent standards when considering pro se pleadings and other submissions than when judging the work product of an attorney. See Haines v. Kerner, 404 U.S. 519 (1972).

C. Discussion

1. Defendants Jack Doe and Jill Doe (identified in Plaintiff's Second Amended Complaint as "Allegheny County Correctional Medical Technicians")

These Defendants argue that the medical records maintained by the Allegheny County Jail and ACHS produced in discovery reveal that Plaintiff was given medications every day of his incarceration. (Doc. No. 65-1 at 2.) Specifically, an initial medical intake exam was performed on Plaintiff by ACHS on July 22, 2003 at approximately 5:00 p.m. A document

entitled "Medical Problem Sheet," reflects information given by Plaintiff to ACHS personnel describing certain aspects of his medical/health history including the names of his physicians and the name of his pharmacy. (Doc. No. 65-2 at 1.) Another document entitled "Intake Information Sheet," also dated July 22, 2003 at approximately 5:00 p.m., reflects the name of Dr. Dimidio [sic] as Plaintiff's emergency contact and certain insurance information. (Doc. No. 65-2 at 2.) "Intake Progress Notes" designated with the same date and time reflect a description of Plaintiff's appearance at the time, certain vital signs, and Plaintiff's report of his history of cardiac problems. This document further indicates that Plaintiff was given 500 mg. Glucophage, and 50 mg. Lopressor. (Doc. No. 65-2 at 3.) Another ACHS document reflects that a "Suicide Prevention Screen" was completed on the same date and time and reflects that Plaintiff was "very intensely focused on his legal situation with ATT&T and the Bell System. Unclear of truth of any statements." (Doc. No. 65-2 at 4.) "Progress Notes" from ACHS dated July 23, 2003, the second day of Plaintiff's incarceration, indicate that at approximately 3:05 p.m., the following medications were designated for Plaintiff times 14 days: Lanoxin 0.125 mg., Lasix 40 mg., Lopressor 50 mg., Glucophage 500 mg., Glynase 3 mg., ECASA 81 mg., Lipitor 20 mg.

Other ACHS documents include an "Intake History and Physical Examination" form, also dated July 23, 2003, reflecting Plaintiff's responses to questions concerning his past surgical history, family health history, social history, a listing of medications and allergies. (Doc. No. 65-2 at 7.) A second page with the same title and date reflects the results of Plaintiff's physical examination and notes Plaintiff's scar from cardiac bypass surgery. (Doc. No. 65-2 at 8.)

In response to Defendants Jack Doe and Jill Doe's Motion for Summary

Judgment, Plaintiff states that "[i]t is admitted that the documentation prepared by ACHS records the dispensing of medications . . . but it is denied that the Plaintiff was given medication substantially similar to the variety and dosages prescribed for him by his doctors and regularly taken." (Doc. No. 66 at ¶ 2) (emphasis added). Plaintiff also contends that he "unequivocally disputes any assertions made by the health care professionals that I was regularly given my prescribed medications. Any 'records' purportedly implying the contrary are either mistaken or intentionally false." (Doc. No. 71 at ¶ 2) (emphasis added).

The due process clause of the Fourteenth Amendment prohibits the state from imposing punishment on pretrial detainees who have yet to be been convicted of any crime. Bell v. Wolfish, 441 U.S. 520, 535 (1979). The United States Court of Appeals for the Third Circuit, however, is guided by Eighth Amendment jurisprudence that prohibits the infliction of cruel and unusual punishment on convicted prisoners, as the due process rights of pretrial detainees are at least as great as the Eighth Amendment rights of convicted prisoners. Woloszyn, 369 F.3d at 319 n.5 (3d Cir. 2005) (citing Boring v. Kozakiewicz, 833 F.2d 468, 471-72 (3d Cir. 1987)). Further, "no determination has as yet been made regarding how much more protection unconvicted prisoners should receive." Woloszyn, 369 F.3d at 319 n.5 (quoting Kost v. Kozakiewicz, 1 F.3d 176, 188 n.10 (3d Cir. 1993)). Thus, Plaintiff's Fourteenth Amendment medical treatment claims can be analyzed by recourse to cases decided in an Eighth Amendment context. See Kost v. Kozakiewicz, 1 F.3d 176 (3d Cir. 1993). See generally Hubbard v. Taylor, 399 F.3d 150, 164-67 & nn. 21-23 (3d Cir. 2005).

In Estelle v. Gamble, the United States Supreme Court concluded that the Eighth Amendment prohibits the deliberate indifference to serious medical needs of prisoners. 429 U.S.

97, 104 (1976). In order to establish a violation of Plaintiff's constitutional right to adequate medical care, evidence must show that Plaintiff had a serious medical need, and prison officials' acts or omissions demonstrated a deliberate indifference to that need. Rouse v. Painter, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle, 429 U.S. at 106).

The United States Supreme Court clarified its meaning of the term "deliberate indifference" in Farmer v. Brennan, 511 U.S. 825 (1994). In Farmer, the Court held as follows:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38. The Farmer Court also discussed its reasoning in Estelle, noting that negligence in diagnosing or treating the medical conditions of prisoners will not rise to the level of an Eighth Amendment violation. Farmer, 511 U.S. at 835 (quoting Estelle, 429 U.S. at 106). Disagreement as to the proper medical treatment is also insufficient. Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (citing Monmouth County Correctional Institutional Inmates v. Lanzaro ("MCCII"), 834 F.2d 326, 346 (3d Cir. 1987)). Specifically, "[i]t is established that claims of inadequate medical treatment which reflect a mere disagreement with prison authorities over proper medical treatment do not state a claim of constitutional magnitude." Massey v. Hutto, 545 F.2d 45, 46 (8th Cir.1976) (per curiam), cited in, MCCII, 834 F.2d at 346.

Here, the record does not support Plaintiff's claim that Defendants were deliberately indifferent to his serious medical needs by denying him medications for an extended period of time, or otherwise. As noted above, the "Intake Progress Notes" dated July 22, 2003,

the first day of Plaintiff's incarceration, indicate that Plaintiff was given 500 mg. Glucophage, and 50 mg. Lopressor, medications for diabetes, and cardiac conditions, respectively. (Doc. No. 65-2 at 3.) Thereafter, "Progress Notes" from ACHS dated July 23, 2003, at approximately 3:05 p.m., indicate that the following medications were designated for Plaintiff, times 14 days: Lanoxin 0.125 mg., Lasix 40 mg., Lopressor 50 mg., Glucophage 500 mg., Glynase 3 mg., ECASA 81 mg., Lipitor 20 mg. Plaintiff admits that in the early afternoon of July 24, 2003, almost immediately before being processed out of the Jail, he began to receive at least some of his prescription medications. (Second Amended Complaint at ¶ 27.) In his submissions to this Court, Plaintiff does not dispute that he received the medications reflected in the documentation produced in discovery. Instead, he contends that he was not "given medication substantially similar to the variety and dosages prescribed for him by his doctors and regularly taken." (Doc. No. 66 at ¶ 2.) Plaintiff further contends that he "unequivocally disputes any assertions made by the health care professionals that [he] was regularly given [his] prescribed medications." (Doc. No. 71 at ¶ 2). It is irrelevant whether Plaintiff was given medication substantially similar to that prescribed to him by his own doctors and in substantially similar dosages, or whether he was regularly given his prescribed medications. Plaintiff is not entitled to the medical care of his choice. See Spruill, 372 F.3d at 235. Instead, Plaintiff must show that prison officials were aware of his serious medical needs, and despite this awareness, were deliberately indifferent to them. Plaintiff cannot demonstrate deliberate indifference on this record. The above documentation reflects that upon his first day at the Allegheny County Jail, Plaintiff's medical needs and history were assessed and medication for both his cardiac and diabetes conditions were administered. A suicide prevention screening was also performed that same day. Further

medical examinations were conducted on Plaintiff's second day of incarceration with indications for further medications. No reasonable jury could conclude on this record that the Allegheny County Correctional Medical Technician Defendants, designated as Jack Doe and Jill Doe, were deliberately indifferent to Plaintiff's serious medical needs including his diabetes and cardiac condition. Consequently, it is recommended that Defendants' Motion for Summary Judgment at Doc. No. 64 be granted.

2. Defendants Allegheny County, Calvin Lightfoot (former Warden of Allegheny County Jail), Fred Rosemeyer (present Warden of Allegheny County Jail), James Roddey (former County Chief Executive), and Dan Onorato (present County Chief Executive)

The above Defendants contend that they are entitled to summary judgment on all remaining claims for the following reasons: 1) the individual defendants must be dismissed because there is no allegation or evidence of personal involvement in the alleged constitutional violation; 2) the deliberate indifference claim against the County must be dismissed because there is no evidence that the County was deliberately indifferent to the serious medical needs of Plaintiff, and the County did not have a policy or custom of being deliberately indifferent to the medical needs of inmates; and 3) the County's policy regarding confiscation of medication does not give rise to a procedural due process claim.

In Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978), the United States Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983. In so ruling, however, the Court declared

that municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, that is, through application of the doctrine of respondeat superior. Instead, the Court concluded that a governmental unit may be liable under § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694. The "official policy" requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible. Id.

In finding municipal liability pursuant to § 1983, the plaintiff must identify the policy, custom or practice of the municipal defendant that results in the constitutional violation. Id. at 690-91. A municipal policy is made when a decision-maker issues an official proclamation or decision. Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986), quoted in, Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990). A custom or practice, however, may consist of a course of conduct so permanent and widespread that it has the force of law. Andrews, 895 F.2d at 1480. To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision-maker had notice that a constitutional violation could occur and that the decision-maker acted with deliberate indifference to this risk. Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000). Finally, Plaintiff must show a causal connection between the custom or policy and the violation of the constitutional right. Bielevicz v. Dubinon, 915 F.2d 845, 850-51 (3d Cir. 1990). That is, a plaintiff must demonstrate an "affirmative link" or "plausible nexus" between the policy, custom or practice and the alleged constitutional deprivation. Bielevicz, 915 F.2d at 850-51.

Here, with regard to the County, one of Plaintiff's remaining claims is that the County was deliberately indifferent to his serious medical needs in denying him prescription medications for an extended period of two days after being processed into the Jail. First, as clearly mandated by Monell, the County may not be held liable simply because it employed any offending officials. Instead, Plaintiff must provide evidence that there was a relevant County custom or policy, and that the custom or policy caused the constitutional violation that he alleges, namely, the denial of prescription medications for an extended period. See Monell, 436 U.S. at 694. The record in this case evinces the contrary. Plaintiff has directed this Court to no official proclamation or decision constituting an official policy of a decision maker other than a Memorandum dated April 1, 1996 from James Longmore, Deputy Warden of Services. (Doc. No. 44 at 29-31.) The Memorandum relates to "General Duties: Intake, Intake Floor, Pre-arraignment/Court Holding, Processing, Search, Escort, and Property Officers." The parties do not dispute that this document represents the procedures in place regarding inmate processing at the time of Plaintiff's brief incarceration at the Allegheny County Jail from July 22, 2003 through July 24, 2003. This Memorandum, however, provides for the immediate interfacing between arriving inmates and medical staff at Procedure E1., E3.and E4. as follows:

> 1. The Intake Floor Officer and medical staff meet the arresting officer and prisoners in the intake sally port.
>
> . . .
>
> 3. The medical staff will do a medical assessment of the prisoner using RECEIVING SCREENING FORM.
>
> 4. If medical staff determines that medical attention is required they will:
>
> a. advise arresting officer that medical clearance at an emergency room is required prior to booking.
>
> b. provide arresting officer with a written reason as to why the prisoner is being refused.

(Doc. No. 44 at 31) (emphasis in original). There are no procedural guidelines contained in this document that require or suggest that prescription medications be withheld. In addition, Plaintiff has provided no evidence of a course of conduct of denying prescription medications, so permanent and widespread, that it has the force of law so as to constitute an established custom or practice in the Jail. Conversely, the record demonstrates that on the very same day that Plaintiff arrived at the County Jail, medical examinations, medical history inquiries, and medications relating to Plaintiff's cardiac and diabetes conditions were begun. Moreover, Plaintiff can point to no evidence in the record that a County decision-maker had notice that medications were being denied to newly processed inmates for extended periods and that this County decision-maker acted with deliberate indifference to this risk in allowing this custom or practice to continue until it adversely affected Plaintiff. See Berg, 219 F.3d at 276. See also Parent v. Roth, 2001 WL 1243563 *4 (E.D. Pa. 2001) (municipal liability not found where record evidence did not establish policy or custom that prohibited Plaintiff inmate from receiving replacement prescription pain medication immediately). Therefore, it is recommended that Defendant County's Motion for Summary Judgment on Plaintiff's Fourteenth Amendment deliberate indifference claim be granted.

Likewise, the County cannot be held liable for a Fourteenth Amendment Due Process violation. The only remaining inquiry as to Plaintiff's Fourteenth Amendment Due Process claim is whether the Memorandum dated April 1, 1996 from James Longmore, Deputy Warden of Services, gives rise to a property interest. See Report and Recommendation, Doc. No.

18 at 19.[3] Procedure E6.d. provides that when "prescription medications are discovered, the items will be turned over to the ground level medical department." (Second Amended Complaint at Exhibit 2, Doc. No. 44 at 31.)

Clearly, this procedure does not give rise to a constitutionally protected property interest. The United States Supreme has stated that to have a property interest in a benefit, "'a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" Town of Castle Rock, Colorado v. Gonzales, 125 S.Ct. 2796, 2803 (2005). (quoting Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)). Here, no form of a benefit is conferred to inmates by virtue of the procedure in issue. Instead, the procedure only indicates that during the intake/processing stage of incarceration, any prescription medications found will be turned over to the ground level medical department. As noted by the United States District Court for the Eastern District of Pennsylvania, the initial confiscation of medication from Plaintiff alone is not actionable:

> Prison authorities "universally confiscate medications" from new inmates. Dawson v. Kendrick, 527 F. Supp. 1252, 1307 (S.D.W.Va. 1981). Because of their responsibility to provide proper medical care, prison authorities clearly have a legitimate interest in controlling the prescription and administration of medication to persons in their custody. Legitimate prisoner safety and prison security interests are also clearly implicated by inmate possession of even prescription drugs.

Garcia v. County of Bucks, PA, 155 F. Supp.2d 259, 267 n.12 (E.D. Pa. 2001). See also Parent, 2001 WL 1243563 at *4 (policy of confiscating all prescription medications at intake not

---

[3]Again, the parties do not dispute that this document represents the procedures in place regarding inmate processing at the time of Plaintiff's brief incarceration at the Allegheny County Jail from July 22, 2003 through July 24, 2003.

unconstitutional on its face). Consequently, it is recommended that Defendants' Motion for Summary Judgment be granted on Plaintiff's Fourteenth Amendment Procedural Due Process claim.

As to the individual defendants Calvin Lightfoot (former warden), Fred Rosemeyer (present warden), James Roddey (former County Chief Executive), and Dan Onorato (present County Chief Executive), Defendants argue that summary judgment must be granted because the doctrine of respondeat superior cannot form the basis of a claim against them, and Plaintiff has failed to allege and prove that they had any personal involvement in the medical care he received while incarcerated. (Doc. No. 63-1 at 5.) The law is clear that in order to impose § 1983 liability on these individuals, Plaintiff must show that these Defendants somehow participated in the alleged violation of Plaintiff's rights. See Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3d Cir. 1995.) There is no evidence at all that any of these Defendants had personal knowledge of, or were personally involved with the alleged constitutional violations.

To the extent that Plaintiff claims any one or all of these individual Defendants are liable on the basis of supervisory liability, Plaintiff's claims against these individuals must also fail. The Court of Appeals for the Third Circuit set forth the standard for imposing liability against a supervisor under § 1983 in Sample v. Diecks, 885 F.2d 1099 (3d Cir. 1989). Relying on the precepts set forth by the United States Supreme Court in City of Canton v. Harris, 489 U.S. 378 (1989), the Sample court noted that "a 'person' is not the 'moving force [behind] the constitutional violation' of a subordinate, unless that 'person'–whether a natural one or a municipality–has exhibited deliberate indifference to the plight of the person deprived." Sample, 885 F.2d at 1117-18. The Court continued that in order to establish supervisory liability, the

plaintiff must identify a specific supervisory practice or procedure that the defendant failed to employ, that the existing custom or practice without that specific practice or procedure created an unreasonable risk of harm, that defendant was aware that this unreasonable risk existed, that defendant was indifferent to that risk, and that plaintiff's harm resulted from defendant's failure to employ that supervisory practice or procedure. 885 F.2d at 1118. As to causation, the Sample court concluded as follows:

> On remand, the district court should bear in mind that under the teachings of City of Canton it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did. The district court must insist that [plaintiff] identify specifically what it is that [defendant] failed to do that evidences his deliberate indifference. Only in the context of a specific defalcation on the part of the supervisory official can the court assess whether the official's conduct evidenced deliberate indifference and whether there is a close causal relationship between the "identified deficiency" and the "ultimate injury."

Sample, 885 F.2d at 1118.

Here, there is absolutely no evidence in the record meeting any of the above requirements with regard to imposing supervisory liability upon these § 1983 Defendants. There is no evidence that any of them were deliberately indifferent to Plaintiff's medication needs. That is, Plaintiff has not identified a specific supervisory practice or procedure that any one or all of these defendants failed to employ. Nor has the Plaintiff demonstrated that the existing practices in the Jail regarding the administration of medication to newly processed inmates, without the identified specific practice, created an unreasonable risk of harm to Plaintiff. Moreover, there is no evidence in the record that these Defendant was aware of that risk and were deliberately indifferent to it. Finally, Plaintiff has not shown that his alleged harm resulted from

the failure to employ the supervisory practice or procedure.[4] Therefore, it is recommended that the Motion for Summary Judgment filed by Defendants Lightfoot, Rosemeyer, Roddey, and Onorato be granted.

## III. CONCLUSION

It is recommended that Defendants' Motions for Summary Judgment at Docket Nos. 62 and 64 be granted.

In accordance with the Magistrate's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this Report and Recommendation. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

s/ Lisa Pupo Lenihan
LISA PUPO LENIHAN
United States Magistrate Judge

---

[4]In his response to the Motion for Summary Judgment filed by Defendants Jill Doe and Jack Doe , Plaintiff contends that he "could never obtain any cooperation with discovery." (Doc. No. 66 at 4.) Plaintiff, although proceeding pro se, has filed papers in this case seemingly drafted by an attorney familiar with the fact pleading requirements of the Pennsylvania Rules of Civil Procedure. Yet, Plaintiff has failed to avail himself of the protections of the Federal Rules of Civil Procedure to compel discovery. Instead, Plaintiff states that he "did not elect to overburden the Court by multiplying the proceedings in this case and has been content to let the record of non-cooperation by the Jack Doe and Jill Doe Defendants and their counsel speak for itself . . .." (Doc. No. 69 at ¶ 7.)

Dated: February 21, 2007

cc: The Honorable David S. Cercone
United States District Judge

John Gagliardi
191 Wall Road
Jefferson Hills, PA 15025
Pro Se

All counsel of record